UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00187

KENTUCKY LEAGUE
OF CITIES INSURANCE
SERVICES ASSOCIATION                                                    PLAINTIFF

v.

ARGONAUT GREAT
CENTRAL INSURANCE
COMPANY                                                                  DEFENDANT

MEMORANDUM OPINION

This matter is before the Court on competing motions for summary judgment. Def.'s Mot. Summ. J., Docket Number ("DN") 9; Pl.'s Mot. Summ. J., DN 13. The parties have responded and replied to each motion. Fully briefed, this matter is now ripe for adjudication. For the following reasons the Defendant's motion is **GRANTED** and the Plaintiff's motion is **DENIED**.

**I.**

In this case two insurance companies ask the Court to declare the method by which they will allocate the costs of defending a lawsuit brought against their insured, a municipal water company. The Plaintiff advocates for an "equal shares" approach, whereby the defense costs would be divided equally among the insurers. The Defendant seeks apportionment by the parties' "time-on-the-risk," meaning that its costs of defending the lawsuit would be proportional to the number of years it insured the water company. For the reasons that follow the Court holds that the cost of defending the underlying action shall be allocated between the parties by their time on the risk.

**II.**

In August 2001, Waller and Angie Hulette and their minor children ("the Hulettes") moved into a residence in Paducah, Kentucky. By 2008, each of the family members had allegedly suffered a number of debilitating skin infections and conditions. The family moved out of the residence in August 2008. In April 2009, the Hulettes sued the City of Paducah ("the city") and its municipal utility, Paducah Water Works ("Paducah Water"), claiming that their injuries were caused by exposure to faulty water provided to the home throughout the eight year period they lived there. The Hulettes, the city, and Paducah Water resolved the underlying case on June 11, 2012, when all claims were dismissed by agreement of the parties. *See* Agreed Order of McCracken Circuit Ct., DN 13-2, p. 4.

During the eight year period relevant to the Hulettes' lawsuit, Paducah Water was insured by the parties to the present case through a series of end-to-end, one-year policies. The plaintiff, Kentucky League of Cities Insurance Services Association ("KLC"), insured Paducah Water from July 1, 2001, through July 1, 2007.[1] Thereafter, the defendant, Argonaut Great Central Insurance Company ("Argonaut") insured Paducah Water from July 1, 2007, until July 1, 2009.[2] The policies were year-to-year and never overlapped. KLC and Argonaut never concurrently insured Paducah Water. Rather, they insured Paducah Water in consecutive periods.

KLC also insured the city during these periods. Argonaut never insured the city, however, and the dispute between the parties arises solely from insurance coverage they provided to Paducah Water from 2001 to 2009.

Following notice of the Hulettes' lawsuit against Paducah Water, KLC began defending

---

[1] From July 1, 2001, though July 1, 2005, KLC insured Paducah Water for up to $1,000,000 in coverage. From July 1, 2005, through July 1, 2007, the policy limits increased to $2,000,000.
[2] The policies Argonaut issued to Paducah Water for the two years between July 1, 2007, and July 1, 2009, had $2,000,000 limits.

those claims under a reservation of rights.  After receiving notice of the suit, Argonaut informed KLC that it would pay a portion of the defense costs.  KLC asked Argonaut to share the costs equally.  Through a series of negotiations Argonaut offered to pay up to twenty-five percent.  Argonaut reasoned that it could only be held liable for twenty-five percent of the costs because it was only "on the risk" during twenty-five percent of the period relevant to the Huelettes' lawsuit.  In other words, Argonaut was only contractually obligated to provide liability coverage to Paducah Water during two of the eight years at issue in the Huelettes' action and, therefore, should only be obligated to pay defense costs commensurate with its liability obligation.  KLC rejected this offer and continues to claim that Argonaut is responsible for half of the cost of defending Paducah Water.

KLC spent $204,216.25 defending Paducah Water in the underlying case.  *See* Aff. Linda Scherr, DN 13-2, ¶ 8.  Using its equal shares approach, KLC argues that Argonaut must pay half of the costs, or $102,108.12.  Argonaut contends that it is only liable for a quarter of the costs, or $51,054.06.

The parties agree that either the equal shares or the time-on-the-risk approach governs this dispute.  Neither party has argued that it is exempt from sharing defense costs or that the underlying insurance policies issued to Paducah Water are ambiguous in a way that would alter the manner in which the costs are to be apportioned.  Argonaut does not dispute that it had a duty to defend and has not argued that the aggregate costs incurred by KLC are excessive or unreasonable.  Therefore, the decision before the Court is a limited one.  Either summary judgment is due to KLC under the equal shares approach or it is due to Argonaut applying the time-on-the-risk.

### III.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while the substantive law of Kentucky is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v.*

*Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (abrogated on other grounds in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

## IV.

The instant action arises in the context of "continuous exposure" injuries. Continuous exposure cases occur when plaintiff's injuries manifesting at present are the result of exposure to a harmful agent across some previous period of time. Injuries associated with the inhalation of asbestos are the classic example of continuous exposure injuries. Courts must confront a number of unique challenges when resolving continuous exposure cases, including how to apportion defense costs among multiple insures that may have insured the manufacturer or supplier of the harmful agent.

No Kentucky court has addressed the manner in which defense costs are to be apportioned to consecutive insurers in continuous exposure cases. The Sixth Circuit, however, follows the time-on-the-risk approach. *See Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), *modified* 657 F.2d 814 (6th Cir. 1981), *cert. denied* 454 U.S. 1109 (1981).

*Forty-Eight Insulations* was an asbestos case in which the defendant manufacturer was sued by workers exposed to its products over a number of years. During the period relevant to the workers' claims, the defendant was self-insured during some years and insured by various insurance companies during others. *See id.* at 1215. The trial court determined that the costs of defending the workers' case should be allocated in proportion to the insurers' time on the risk. *Id.* at 1224. Accordingly, the defendant was required to bear the costs of defending the action in proportion to the years it was self-insured. *Id.* The defendant appealed. Relying on the rule that an insurer's duty to defend is broader than its duty to indemnify, the defendant argued that it

5

"should not be liable for any costs of defense, even if part or most of the lawsuit concerned periods of time when [it] was uninsured." *Id.*

The Sixth Circuit rejected the defendant's argument and affirmed apportionment of defense costs by each party's time on the risk. *See id.* at 1224-25. As the court explained:

> An insurer must bear the entire cost of defense when there is no reasonable means of prorating the costs of defense between the covered and not-covered items. Thus, in the typical situation, suit will be brought as the result of a single accident, but only some of the damages sought will be covered under the insurance policy. In such cases, apportioning defense costs between the insured claim and the uninsured claim is very difficult. As a result, courts impose the full cost of defense on the insurer.
>      These considerations do not apply where defense costs can be readily apportioned. The duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

*Id.* (citations omitted). Accordingly, the rule established in *Forty-Eight Insulations* is that in continuous exposure cases, insurers apportion defense costs by their time on the risk in the period in which the injured party was exposed to the harmful agent. *Id.* at 1225 ("The different insurance companies will pro-rate defense costs among themselves."). If the court had adopted the position advocated by the defendant, "a manufacturer which had insurance coverage for only one year out of 20 would be entitled to a complete defense of all asbestos actions for 20 years out of 20." *Id.* This argument was unsupported by logic or precedent. *Id.*

The *Forty-Eight Insulations* decision regarding defense costs has been followed by other panels of the Sixth Circuit, *see, e.g.*, *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 790-91 (6th Cir. 1987), and this Court on at least one occasion, s*ee Liberty Mut. Fire Ins. Co. v. Harper Indus.*, No. 5:05-cv-243-R, 2007 WL 528523 (W.D. Ky. Feb. 12, 2007).

Although *Forty-Eight Insulations*, *Budd*, and *Harper* are persuasive, they are not

controlling because they did not interpret or apply Kentucky law. *Forty-Eight Insulations* was a Michigan case that applied the law of Illinois and New Jersey. *See Forty-Eight Insulations*, 633. F.2d at 1219. *Budd* applied the law of Michigan. *See Budd Co.*, 820 F.2d at 788. Finally, in *Harper*, all the parties cited *Forty-Eight Insulations* "as the controlling authority to determine the proper method of allocation." *Harper*, 2007 WL 528523, at *8. Accordingly, they agreed to be governed by the principles of that case and merely argued over its interpretation and application.

The instant case was removed to this Court on diversity grounds and is governed by Kentucky's substantive law. KLC has repeatedly stated that, unlike the parties in *Harper*, it does not agree to the application of *Forty-Eight Insulation* and contests its reasoning. KLC argues that a Kentucky court considering this case would follow certain public policy considerations and adopt the equal shares approach rather than apportionment by time on the risk. The Court disagrees. Although *Forty-Eight Insulations*, *Budd,* and *Harper* are not dispositive, the "[t]ime on the risk [allocation of defense costs] is the allocation method 'applied by the vast majority of courts allocating liability." *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 518 (D.R.I. 2011) (quoting *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 105 (S.D.N.Y. 1999)). Accordingly, the Court finds that a Kentucky court considering the issue would apply the sound and well-reasoned principles set forth in *Forty-Eight Insulations* and its progeny. KLC's arguments to the contrary are unavailing.

## V.

KLC is correct that an insurer's duty to defend is broader than its duty to indemnify. *See James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky. 1991). In most cases, this means that an "insurer must bear the entire costs of defense when 'there is no reasonable means of prorating the costs of defense between the covered and not-

covered items." *Forty-Eight Insulations*, 633 F.2d at 1224 (quoting *Nat'l Steel Constr. Co. v. Nat'l Union Fire Ins. Co.*, 543 P.2d 642, 644 (Wash. Ct. App. 1975)). But where a distinction between covered and not-covered risks "can readily be made, the insured must pay its fair share for the defense of the non-covered risks." *Id.* at 1225; *see Brown Found.*, 814 S.W.2d at 279 ("The duty to defend continues to the point of establishing liability upon which [the] plaintiff was relying was in fact not covered by the policy . . . .").

In this case, as in *Forty-Eight Insulations*, a distinction between the covered and non-covered risks in Argonaut's policies is readily apparent based on the time periods covered by those policies. The duty to defend arises only as the result of a contractual agreement. *Brown Found.*, 814 S.W.2d at 279-80 ("The defense clause in the policy contract is a contractual right of the insured for which he has paid a premium[.]"); *Forty-Eight Insulations*, 633 F.2d at 1224 ("The duty to defend arises solely under contract."). By implication, this means that the duty to defend is temporal, having a definite commencement date and, in most circumstances, a predetermined date of termination. The duty to defend exists for covered risks occurring during the periods set forth in the policy, and an "insurer has not contracted to pay defense costs for occurrences which [take] place outside the policy period." *Forty-Eight Insulations*, 633 F.2d at 1225. In calculating the premiums required to purchase a policy, insurers consider the likelihood that a particular covered risk will fall within the coverage period of the policy. No insurer contracts to cover risks that may occur outside of a policy's temporal constraints. To impose that obligation would transform an insurance policy into a policy of indefinite indemnification and thereby destroy the risk calculations that make insurance possible.

In continuous exposure cases, where the date of the first or the most contact with a harmful agent cannot be determined, division of costs equally among insurers rather than by their

time on the risk could extend the duty to defend beyond the policy's temporal boundaries. Such a result is neither logical nor reasonable. Furthermore, it is unsound policy because the system of insurance cannot properly function if the potential claims that must be defended are indefinite, unknowable, and can occur before the duty to defend attaches.

## VI.

In support of its equal shares argument, KLC relies on *Wooddale Builders v. Maryland Cas.*, 722 N.W.2d 283 (Minn. 2006), and *Argonaut Ins. Co. v. Med. Liab. Mut. Ins. Co.*, 760 F. Supp. 1078 (S.D.N.Y. 1991) ("*MLMIC*"). Both of those cases are distinguishable from present circumstances.

In *Wooddale Builders*, the Minnesota Supreme Court rejected *Forty-Eight Insulations*. *Wooddale Builders*, 722 N.W.2d at 301. Instead, the court apportioned the defense costs by equal shares. *Id.* at 304 ("[W]hen the pro-rata-by-time-on-the-risk method applies to allocation of liability, and insurers participate in providing a defense to a common insured . . . defense costs are apportioned equally among insurers whose policies are triggered."). The court based its decision on policy grounds, reasoning that an equal shares approach would lead to a swifter resolution of cases because "[i]f insurers know from the beginning that defense costs will be apportioned equally among insurers whose policies are triggered, the possibilities for delay will be minimized because no insurer will benefit from delaying or refusing to undertake a defense." *Id.* at 303-04. This policy was particularly important in *Wooddale Builders* because none of the plaintiff's insurers, even after notice, had taken action to defend that claims brought against the plaintiff. *See id.* at 289. That underlying consideration is not at play in this case. KLC began defending Paducah Water upon notice of the Huelettes' lawsuit, and Argonaut agreed to share defense costs when notified by KLC. Furthermore, *Wooddale Builders* is a case applying

Minnesota law, and while KLC criticizes Argonaut's reliance of *Forty-Eight Insulations* because it does not apply Kentucky law, KLC has not sufficiently explained why Minnesota law is more persuasive under these circumstances.

In *MLMIC* the court apportioned defense costs by equal shares against Argonaut even though it had only been on the risk during one of seventeen years. *See Med. Liab. Mut. Ins. Co.*, 760 F. Supp. at 1079. The decision to apportion costs by equal shares turned on two grounds. First, the court concluded that Argonaut had agreed to share defense costs equally. *Id.* at 1080-84. Specifically, the court held that an exchange of correspondence between Argonaut and the other defendant insurers was a binding agreement in which Argonaut agreed to share costs. *Id.* Second, the court found that even if there was no binding agreement, the "other insurance" provisions in the policies at issue mandated an equal division of defense costs. *Id.* at 1084-86.

The present case is factually distinguishable from *MLMIC*. There is no correspondence showing that Argonaut ever agreed to an equal apportionment of defense costs. Rather, evidence shows that it has never agreed to share more than twenty-five percent of the costs. Second, KLC has conceded that "other insurance" in the parties' policies "does not control the Court's decision in this case." Pl.'s Resp. Br., DN 10, p. 12. Neither KLC nor Argonaut has presented an argument that the other insurance provisions are applicable in the case, especially where the policies were "end-to-end," and there was no overlapping or concurrent coverage. Therefore, the two factual circumstances on which *MLMIC* is based are not present here, making that case unpersuasive.

## CONCLUSION

KLC and Argonaut filed cross-motions for summary judgment asking the Court to declare the method by which defense costs should be apportioned in this case. For all of the

foregoing reasons, KLC's motion is **DENIED** and Argonaut's motion is **GRANTED**.  The costs of defending Paducah Water in the underlying lawsuit shall be apportioned between the parties based on their time on the risk.  A separate order shall follow.